UNITED STATES BANKRUPTCY COURT

DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In re:

Jalen Marie Burns,                                          Case No. 23-30129 WJF

_____

Mary R. Jensen,

United States Trustee,

              Plaintiff(s),

v.                                              ADV. Case No. 23-3041


Wesley W. Scott and

LifeBack Law Firm, P.A.

              Defendant(s).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR AFFIRMATIVE DEFENSES

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## BACKGROUND AND PROCEDURAL POSTURE

Plaintiff Mary R. Jensen, United States Trustee (UST), commenced this adversary proceeding on July 12, 2023 following the dismissal of Jalen Marie Burns Chapter 7 bankruptcy proceeding. Plaintiff's Complaint asserts four causes of action against Defendants Wesley Scott and LifeBack Law Firm, P.A.: (1) violations of 11 U.S.C. § 707(b)(4) and Fed. R. Bankr. P. Rules 1008 and 9011; (2) violations of 11 U.S.C. § 526(a)(2); (3) violation of 11 U.S.C. § 528; and (4) violations of professional duties and the need to for regulation of attorney misconduct in Bankruptcy cases.

In her Complaint, the UST seeks the following relief:

a.     Cancelling and voiding the contractual agreement (if any) between Jalen Burns and Wesley Scott and LifeBack;

b.     Imposing the following sanctions:

    i.     Directing Wesley Scott and LifeBack to reimburse Ms. Burns for all legal expenses incurred by Steven Opheim and Dudley and Smith P.A. for representing Ms. Burns; and

    ii.     Directing Wesley Scott and LifeBack to reimburse Andrew Pulkrabeck for all legal fees incurred by George Warner and Warner Law LLC;

c.     Enjoining LifeBack from using electronic signatures generated by commercially available digital software for a period of two years and that LifeBack be required to maintain a copy of the underlying wet signatures for each bankruptcy case; and

d.     Enjoining Wesley Scott from engaging in the practice of law before the United States Bankruptcy Court for the District of Minnesota for six months.

During the telephonic status conference on August 31, 2023, counsel for the UST indicated that the UST was no longer pursuing relief against Mr. Scott in the form of enjoining him from engaging in the practice of law before the US Bankruptcy Court for the District of Minnesota because the debtor, Jalen Burns, indicated an intention to bring an ethics complaint based on the same sets of facts.[1]  Also during the telephone status conference on August 31, 2023, the Court ordered Defendants to file a brief addressing several of their affirmative defenses, and ordered the UST to file a brief addressing some of the relief sought by the UST in its Complaint.

## ARGUMENT IN SUPPORT OF AFFIRMATIVE DEFENSES

### I.     Defendants have a right to a jury trial given the relief sought by the UST.

In the federal courts, a party's right to jury trial must derive from one of three sources: federal statute; state law, whether constitution or statute; or the Seventh Amendment to the United States Constitution. *In re Wencl*, 71 B.R. 879, 882 (Bankr. D. Minn. 1987) (citing *In re Reda, Inc.*,

---

[1] Jalen Burns did, in fact, file an ethics complaint against Wesley Scott and LifeBack.  Based on the recent filing of an ethics complaint on the same set of facts, Defendants believe this materially changes the landscape for the present action.  Defendants believe this Court should abstain from exercising jurisdiction over this case, and they will address that in more detail in response to the UST's memorandum addressing abstention.

60 B.R. 178 (Bankr. N.D. Ill. 1986) and *In re Rodgers & Sons, Inc.*, 48 B.R. 683 (Bankr. E.D. Okla. 1985)).

The Supreme Court has decidedly held that the Seventh Amendment's right to a jury trial applies in bankruptcy proceedings. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 36, 109 S. Ct. 2782, 2787, 106 L.Ed.2d 26 (1989). According to the Supreme Court, the Seventh Amendment entitles a defendant to a jury trial even in core proceedings, so long as the defendant has not submitted a claim against the bankruptcy estate. *Id.* The Seventh Amendment preserves the right of trial by jury "[i]n Suits at Common Law" but the Seventh Amendment guarantee does not extend to actions lying in equity. *Katchen v. Landy*, 382 U.S. 323, 336–37, 86 S. Ct. 467, 476–77, 15 L.Ed.2d 391 (1966). The appropriate analysis to determine the right to a jury trial in a bankruptcy proceeding "requires a thorough examination of the plaintiff's cause of action, as to the nature of the basic issues, the historical classification of the action and its predecessors, and the remedy invoked." *In re Wencl*, 71 B.R. 879, 882 (Bankr. D. Minn. 1987) (citing *In re Graham*, 747 F.2d 1383, 1387 (11th Cir. 1984)).

Although Plaintiff is asserting violations of various federal statutes, including 11 U.S.C. § 707(b)(4), 11 U.S.C. § 526(a)(2), and 11 U.S.C. § 528, the thrust of Plaintiff's claims is that Wes Scott and LifeBack were negligent and breached professional duties that were allegedly owed to Ms. Burns, which claims sound in tort and are the types of action that give rise to a right to a jury trial. Indeed, at the outset of Plaintiff's Complaint, prior to setting forth the factual allegations that allegedly support her Complaint, the Complaint states that "The United States Trustee asserts that Mr. Scott and LifeBack were negligent in filing with the Bankruptcy Court the petition, schedules, statements and documents without an authorized signature of Jalen Burns, that they improperly altered documents filed with the Court, that they failed to obtain an executed retainer agreement,

and that Mr. Scott breached his professional duties to Ms. Burns in favor of his professional duties to her motion Erin Clark." (Doc. 1, Compl. ¶ 14.)

The remainder of the UST's Complaint includes the factual allegations that the UST contends support how "Mr. Scott and LifeBack were negligent" and how "Mr. Scott breached his professional duties to Ms. Burns." Thus, although the UST's claims are cast as violations of federal statutes, the nature of the claims sound in negligence, and more specifically, professional malpractice.

Significantly, the relief sought by the UST includes monetary relief in the form of compensatory damages – specifically amounts incurred by third-parties Steve Opheim and George Warner as a result of the alleged negligence. In fact, the UST's request for relief asks the Court to issue an order directing Defendants to pay for all legal expenses incurred by Steven Ophiem and George Warner. (Doc. 1, p. 36, ¶ 153(i)(ii)). As a general rule, claims seeking monetary relief or recovery are deemed legal in nature and require a trial by jury. *Control Center, LLC v. Lauer*, 288 B.R. 269, 278 (M.D. Fla. 2002) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352, 118 S. Ct. 1279, 140 L.Ed.2d 438 (1998)).

Moreover, this action does not involve "public rights." In *Granfinanciera*, the Supreme Court ruled that Congress may only deny jury trials in actions at law in those cases where "public rights" are being litigated; Congress "lacks the power to strip parties contesting matters of private right [such as tort, contract, and property claims] of their constitutional right to a trial by jury." *In re Phelps Techs., Inc.*, 238 B.R. 819, 824 (Bankr. W.D. Mo. 1999) (citing *Granfinanciera*, 492 U.S. at 51–52, 109 S. Ct. at 2795). This action involves private rights given the UST's characterization of Wes Scott and LifeBack's actions as negligent, and the specific monetary damages requested to be paid to private parties for Mr. Opheim and Mr. Warner's fees. After the

UST alleges that Mr. Scott and LifeBack were negligent, the UST exhaustively sets forth facts that she alleges supports how Mr. Scott and LifeBack were negligent. (See Doc. 1, Compl. ¶ 14 (alleging Mr. Scott and LifeBack were negligent), and ¶¶ 15–63 (making allegations that allegedly support a finding of negligence).) In an action at law that involves private rights, a defendant cannot be stripped of its constitutional right to a trial by jury. *In re Phelps Techs., Inc.*, 238 B.R. 819, 824 (Bankr. W.D. Mo. 1999) (citing *Granfinanciera*, 492 U.S. at 51–52, 109 S. Ct. at 2795). Mr. Scott and LifeBack are entitled to a trial by jury.

## II.     The UST lacks standing to assert the claims in the Complaint.

### A.  The UST lacks standing to seek the recovery of attorneys' fees for third parties.

The UST does not have standing to seek recovery of attorneys' fees for third parties because the UST has not suffered an injury in fact. "Article III of the United Constitution confines the federal courts to adjudicating actual 'cases and controversies.'" *Potthoff v. Morin,* 245 F.3d 710, 715 (8th Cir. 2001) (citing *Boyle v. Anderson*, 68 F.3d 1093, 1100 (8th Cir.1995) (citation omitted), cert. denied, 516 U.S. 1173, 116 S.Ct. 1266, 134 L.Ed.2d 214 (1996)). "To acquire Article III standing, a plaintiff must have a 'personal stake in the outcome of the controversy.'" *Id.* (citing *Baker v. Carr,* 369 U.S. 186, 209, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). "To satisfy this requirement, the plaintiff must have 'a definite and concrete controversy involving adverse legal interests at every stage in the litigation ... for which the court can grant specific and conclusive relief.'" *Id.* (citing *Arkansas AFL–CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir.1993)).

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the

standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.

*Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "Additionally, under the prudential limits of the standing doctrine, 'even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme Court] has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (citing *Warth*, 422 U.S.at 499, 95 S.Ct. 2197).

To satisfy Article III standing requirements, the UST must demonstrate it has suffered an injury in fact. *Erickson v. AmeriCold Logistics, LLC*, 311 F. Supp. 3d 1073, 1075 (D. Minn. 2018). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1076 (citation omitted). An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Id.* It is the UST's burden, not Defendants' burden, to demonstrate an injury in fact. *Erickson v. AmeriCold Logistics, LLC*, 311 F. Supp. 3d 1073, 1075 (D. Minn. 2018).

The UST has not suffered an injury in fact as it relates to the attorneys' fees it seeks to recover, has not alleged any injury in fact. Instead, the allegations relate to, and the relief requested is for the attorneys' fees of third parties. The allegations in the Complaint are that Jalen Burns hired an attorney, Steve Opheim of Dudley and Smith P.A., to represent her seeking the dismissal of the bankruptcy case. (Doc. 1, Compl. ¶ 139.) The UST further alleges that Ms. Burns' landlord, Andrew Pulkrabek, hired George Warner of Warner Law, LLC to file a motion for relief from stay in Ms. Burns' bankruptcy case on February 7, 2023. (Doc. 1, Compl. ¶ 140.) The UST does not allege that it suffered any injury in fact. Plaintiff has failed to meet its burden of establishing injury in fact.

Moreover, bankruptcy trustees generally do not have standing "to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt [party] itself." *Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.),* 336 F.3d 94, 99–100 (2d Cir. 2003) (quoting *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir. 1991)).

"[N]owhere in the [bankruptcy] statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of [creditors]." *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 428, 92 S. Ct. 1678, 32 L.Ed.2d 195 (1972). Courts have routinely rejected a trustee's attempt to recover damages for injuries particular to creditors, and courts have good reason to do so, because "when the [Trustee] lacks a personal stake in the outcome of a matter, the [Trustee] does not meet the Constitution's case or controversy requirement." *In re 1031 Tax Grp., LLC*, 420 B.R. 178, 195 (Bankr. S.D.N.Y. 2009); *see also Bennett Funding*, 336 F.3d at 101–02 (observing that a trustee does not have constitutional standing to assert damage claims for creditors against third parties); *In re Park S. Secs., LLC,* 326

B.R. at 514 (finding that a bankruptcy trustee lacked constitutional standing to assert unjust enrichment claims on behalf of customers and not the estate).

Here, the Trustee is seeking attorneys' fees on behalf of two third-parties, Steve Opheim and George Warner. Steve Opheim represented Jalen Burns in the bankruptcy proceeding, and George Warner represented one of Jalen Burns' creditors, her landlord, Andrew Pulkrabek. The UST does not have constitutional standing to assert claims against Wes Scott and LifeBack on behalf of these third parties, or to seek recovery on their behalf. The fees sought on behalf of George Warner are explicitly prohibited, as Mr. Warner represented the landlord creditor, and a trustee does not have standing to assert damage claims for creditors. *In re 1031 Tax Grp., LLC*, 420 B.R. 178, 195 (Bankr. S.D.N.Y. 2009).

In addition, as for the fees allegedly incurred by Steve Opheim, we anticipate that discovery will reveal that Jalen Burns did not pay or incur the fees claimed by Mr. Opheim. As a practical matter, if the UST were to prevail on its claim for attorneys' fees and discovery revealed that Jalen Burns did not pay any attorneys' fees, the Court would be faced with the obvious dilemma of who the Court would order those attorneys' fees be distributed to. Because the UST, who stands in the shoes of the debtor, is the party seeking recovery of the attorneys' fees as opposed to Mr. Opheim, the Court could not direct the fees be paid to a non-party, such as Mr. Opheim. *In re Vote*, 261 B.R. 439, 442–444 (B.A.P. 8th Cir. 2001), aff'd, 276 F.3d 1024 (8th Cir. 2002) (legal rights or entitlements that accrue to the debtor after his bankruptcy filing are not property of the bankruptcy estate; thus, they are not subject to a trustee's administration and their proceeds are not distributed to creditors).

Finally, when the UST stands in the shoes of the debtor, it only has the capacity to maintain suit against the Defendants, on behalf of the bankruptcy estate, for causes of action that accrued

*before* the Debtor's bankruptcy filing. *In re Hansel*, No. ADV 08-3177, 2012 WL 3113849, at *6 (Bankr. D. Minn. June 15, 2012). Both the attorneys' fees for Mr. Warner and Mr. Opheim were incurred after the bankruptcy filing, and are therefore not part of the bankruptcy estate.

**B. The UST lacks standing to bring claims premised on legal malpractice.**

Plaintiff's claims against Wes Scott and LifeBack are premised on the theory that "Mr. Scott and LifeBack *were negligent* in filing with the Bankruptcy Court the petition, schedules, statements and documents without an authorized signature of Jalen Burns, that they improperly altered documents filed with the Court, that they failed to obtain an executed retainer agreement, and that *Mr. Scott breached his professional duties to Ms. Burns* in favor of his professional duties to her motion Erin Clark." (Doc. 1, Compl. ¶ 14.) The UST does not have standing to bring claims against Wes Scott and LifeBack on a theory of legal malpractice.

In *In re Hansel*, the UST and debtor jointly commenced an action against the defendant law firm asserting a theory of negligence and breach of professional duty. *In re Hansel*, No. ADV 08-3177, 2012 WL 3113849, at *1 (Bankr. D. Minn. June 15, 2012), report and recommendation adopted sub nom. *Seaver v. Frundt*, No. CIV. 12-1631 MJD/JJG, 2012 WL 3113785 (D. Minn. July 31, 2012) ("Their theory of suit was that the Debtor had lost the benefit of her bankruptcy filing as a proximate result of an unbroken chain of misadvice, inaction, and misfeasance on the part of Frundt, the attorney who had represented her for her bankruptcy case, in breach of his duties of care as a professional."). The Court noted that "the Trustee has the capacity to maintain suit against the Defendants, on behalf of the bankruptcy estate, only if a cause of action for legal malpractice accrued before the Debtor's bankruptcy filing." *Id.* at *6. The Court concluded that "any claim for legal malpractice that came out of [the retention of debtor's counsel] did not accrue until after the Debtor's bankruptcy filing," and "[a]s a result, no such claim passed into the

bankruptcy estate, to come under the Trustee's administration as successor to the Debtor." *Id.* The Court further concluded that the Trustee did not "hold or exercise any interest in the cause of action in his capacity as administrator of the estate, and the Trustee's complaint was dismissed for lack of a cause of action in his favor. *Id.*

The UST's Complaint suffers from an additional flaw, further undermining the UST's standing. On May 18, 2023, at a hearing on Ms. Burns' motion to dismiss, the Court dismissed Ms. Burns' bankruptcy case, and the Court later filed an Order for Dismissal of Case on May 20, 2023. This adversary proceeding was not commenced until July 12, 2023, almost eight weeks after Ms. Burns' bankruptcy case was dismissed.

As a general rule, the dismissal of a bankruptcy case should result in the dismissal of all remaining adversary proceedings. *In re Pocklington*, 21 B.R. 199, 202 (Bankr. S.D. Cal. 1982); *accord*, *In re Rush*, 49 B.R. 158 (Bankr. N.D. Ala. 1985). This is particularly true of adversary proceedings which are "related" to the bankruptcy case, 28 U.S.C. § 157(c)(1), for the related proceedings can only be heard by a bankruptcy court because of their nexus to the debtor's bankruptcy case. *See generally Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984).

As a practical matter, Ms. Burns' Chapter 7 Bankruptcy estate ceased to exist when her bankruptcy case was dismissed. *In re Statistical Tabulating Corp.*, 60 F.3d 1286, 1288 (7th Cir.1995) (and once a case is dismissed, the operation of § 349(b) suggests that it was "as if there had been no bankruptcy."). Since the UST can only assert claims on behalf of the bankruptcy estate, which no longer exists, the UST does not have a bankruptcy estate in which to assert claims on behalf of. *In re Hansel*, No. ADV 08-3177, 2012 WL 3113849 at *6.

The same result that was reached *Hansel* is warranted here. Any cause of action that arose in connection with Wes Scott and LifeBack's negligence and alleged breach of professional duties

owed to Ms. Burns only accrued after Ms. Burns' bankruptcy filing. The UST does not have standing to bring claims against Defendants Wes Scott and LifeBack for claims that accrued after the bankruptcy filing, and that is particularly true where the UST is attempting to assert claims against a bankruptcy estate that no longer exists. The claims brought by the Trustee should be dismissed.

**III.   The relief sought by the UST is, in part, non-justiciable because the Court cannot order the relief sought.**

For the reasons stated above, the UST lacks standing to assert claims against Defendants Wes Scott and LifeBack. By extension, then, the Court cannot grant the relief sought by the UST, which makes the relief and the claims non-justiciable. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (absent standing, there is no "case" or "controversy" such that there is a dispute that can be appropriately resolved through the judicial process).

Moreover, the relief sought by the UST seeking an order enjoining LifeBack from using electronic signatures generated by commercially available digital software for a period of two years from the date of any order or judgement and that LifeBack be required to maintain a copy of the underlying wet signatures for each bankruptcy case is not justiciable. If the relief sought by the UST is obtained, *i.e.*, this Court issues an order prohibiting LifeBack from using electronic signatures and requiring LifeBack to maintain a copy of wet signatures, it creates an ambiguous scenario where it is unclear how any hypothetical violation of the rule or order will be enforced, who maintains jurisdiction to enforce any hypothetical violation, or what the consequences of a hypothetical violation would be. The practical implications of how that relief would be effected and/or enforced supports Defendants' position that the Trustee's claims are non-justiciable and that this Court does not have jurisdiction over the Trustee's request for non-monetary relief as it

relates to enjoining LifeBack from using electronic signatures. *Giles v. Harris*, 189 U.S. 475, 486, 23 S. Ct. 639, 642, 47 L. Ed. 909 (1903) (A party cannot maintain a suit for "a mere declaration in the air.").

## IV. Plaintiff's Complaint fails to state a claim.

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Petters Co., Inc.*, 495 B.R. 887, 893–94 (Bankr. D. Minn. 2013). To meet this standard, and to pass muster in the face of a motion for dismissal under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007)). Rule 12(b)(6) is made applicable to adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7012(b). *In re Petters Co., Inc.*, 495 B.R. 887, 894 fn. 5 (Bankr. D. Minn. 2013). Because the Plaintiff lacks standing to seek the relief it seeks in its Complaint, and because the relief sought is, in part, non-justiciable and unenforceable, Plaintiff's Complaint fails to state a claim on which relief can be granted.

In addition, the UST's Complaint includes allegations of negligence and breaches of the professional duties of care, which allegations sound in professional negligence.

Minnesota Statutes §544.42, subdivision 2 requires that a plaintiff bringing an action against a professional, including a licensed attorney, "alleging negligence or malpractice in rendering a professional service where expert testimony is to be used by a party to establish a prima facie case," to "serve upon the opponent with the pleading an affidavit" of expert review. Specifically, Minn. Stat. § 544.42, subd. 2, provides:

In an action against a professional alleging negligence or malpractice in rendering a professional service where expert testimony is to be used by a party to establish a prima facie case, the party must:

(1) unless otherwise provided in subdivision 3, paragraph (a), clause (2) or (3), serve upon the opponent with the pleadings an affidavit as provided in subdivision 3 . . . .

Moreover, Minn. Stat. § 544.42, subd. 3(1) requires, in relevant part, that the expert review affidavit contain "the facts of the case have been reviewed by the party's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff."

Finally, Minn. Stat. § 544.42, subd. 6 provides that if a plaintiff fails to provide an affidavit of expert review *within sixty days after a demand for the affidavit*. Failure to serve the expert review affidavit within the 60-day statutory time period results, or to obtain an extension from the trial court to comply with the statute, in "*mandatory dismissal* of each cause of action with prejudice as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 544.42, subd. 6(a) (emphasis added); *Lombardo v. Seydow-Weber*, 529 N.W.2d 702, 704-05 (Minn. Ct. App. 1995).

"The purpose of the expert disclosure requirement under Minn. Stat. § 544.42 is to "provide for the early dismissal of frivolous malpractice claims." *Brown–Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 217 (Minn. 2007). "To that end, failure to produce an affidavit of expert review or expert disclosure is fatal to a legal-malpractice claim." *Walsh v. Walsh*, A16-0405, 2016 WL 7439087, at *3 (Minn. Ct. App. Dec. 27, 2016) (unpublished) (citing Minn. Stat. § 544.42, subd. 6 (2014)). Minnesota courts have strictly enforced the requirements of Minn. Stat. § 544.42, "even when strict enforcement has led to harsh results." *Afremov v. Sulloway & Hollis, P.L.L.C.*,

922 F. Supp. 2d 800, 816 (D. Minn. 2013) (citing *Middle River–Snake River Watershed Dist. v. Dennis Drewes, Inc.*, 692 N.W.2d 87, 91 (Minn.Ct.App.2005) ("failure to strictly adhere to the requirements of expert review and disclosure undermines the legislature's procedural reforms in professional-malpractice actions")); *Banken v. Hoke*, No. A08–0160, 2009 WL 366279, at \*4 (Minn. Ct. App. Feb. 17, 2009) (rejecting argument that mandatory dismissal under § 544.42 was overly harsh and violated public policy and holding that the court must apply the clear language of the statute).

Defendants made a demand for the UST's expert review affidavit on August 11, 2023. (Doc. 6 at p.26, ¶ 6.)  Plaintiff was required to serve an affidavit of expert review by October 10, 2023.  To date, the UST has not served an affidavit of expert review.  Without an affidavit of expert review, mandatory dismissal of the UST's claims is warranted, and Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**V.      The UST's claims for attorneys' fees on behalf of third-parties is barred by the doctrine of waiver and estoppel.**

In the event the UST is found to have standing to seek attorneys' fees on behalf of third-parties and on behalf of the debtor's creditors, any claim for attorneys' fees asserted on behalf of Mr. Opheim or on behalf of Mr. Warner would be barred by the doctrine of waiver and estoppel because neither Mr. Opheim nor Mr. Warner sought an award of attorneys' fees in the underlying bankruptcy proceeding.  Similarly, neither Mr. Opheim nor Mr. Warner followed the safe harbor provision that is a prerequisite to the recovery of sanctions.

Rule 9011 of the Federal Rules of Bankruptcy Procedure, provide that if, "after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys...responsible for the violation."  Fed. R. Bankr. P. 9011(c).  The Rule further states that

a motion for sanctions shall be made separately from other motions and it may not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged paper is not withdrawn. Fed. R. Bankr. P. 9011(c)(1)(A). This procedure is referred to as the "safe harbor" provision. Notes of Adv. Comm. On Rules – 1997 Am.

Courts have determined that a failure to follow the safe harbor provision requires a denial of a sanctions motion. *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir. 1995); *see also*, *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir. 2001), *cert. denied,* 534 U.S. 1020, 122 S. Ct. 545, 151 L.Ed.2d 423 (2001) ("Rainbow did not serve the plaintiffs with the motion in advance of filing and thus did not comply with the 21–day advance service provision. Having not followed this procedure, Rainbow was not entitled to obtain an award from the plaintiffs"). Mr. Warner and Mr. Opheim's failure to seek sanctions in the underlying bankruptcy proceeding and their failure to follow the safe harbor provision mandates a denial of any request for sanctions, and it also amounts to a waiver of bringing a claim predicated on the same conduct that required the safe harbor procedure be initiated in the first place.

Waiver involves the "voluntary relinquishment of a known right whose essential elements are both intent and knowledge, actual or constructive." *Meagher v. Kavli*, 251 Minn. 477, 486, 88 N.W.2d 871, 878 (Minn.1958); *see also*, *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 798 (Minn. 2004) (waiver is the "voluntary and intentional relinquishment of a known right"). Discovery could reveal that both Mr. Opheim and Mr. Warner knew that a failure to follow the Rule 9011 safe harbor provisions would result in a denial of any request for sanctions, and that they intended to voluntarily waive their right to seek sanctions if the UST was not acting on their behalf. Such evidence would support an affirmative defense of waiver and estoppel, and the defense is appropriately alleged.

## VI. The UST's claims are barred because there was no valid contract between the UST and LifeBack.

The Trustee asserts that Wes Scott and LifeBack were negligent in the filing of the Bankruptcy petition and Wes Scott breached his professional duties to Ms. Burns. (Doc. 1, Compl. ¶ 14.) As established, these allegations sound in tort, and specifically professional malpractice.

Under Minnesota law, a plaintiff alleging legal malpractice must prove up four elements: 1) an attorney-client relationship existed; 2) the attorney engaged in acts that constituted negligence or breach of contract; 3) such acts were the proximate cause of the plaintiff's damage; and 4) but for the defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action or would have obtained a more favorable result in the underlying transaction than the result obtained. *In re Hansel*, 2012 WL 3113849 at *6 (citing *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816, 819 (Minn. 2006).

In addition to the UST lacking standing to assert such a claim against Defendants because the claim did not accrue until after the bankruptcy filing, there was no valid contract between the Trustee and Wes Scott or LifeBack such that the UST could establish a claim for legal malpractice or attorney negligence. If the UST does have standing to assert such a claim against Defendants, discovery would reveal the lack of a valid contract between the UST and Wes Scott and LifeBack, which would defeat the UST's claim for professional negligence. For the same reason, because the UST is not a party to the contract between Wes Scott and Jalen Burns, the UST cannot seek to void that contract.

## VII. Defendants' decision not to consent to the entry of a final order or judgment was necessary and appropriate.

Defendants affirmatively stated in paragraph 7 of their Answer and Affirmative Defenses that they do not consent to the entry of a final order or judgment, which was directly in response

to Plaintiff's allegation that the UST consent to the entry of a final order or judgment. (*See* Doc. 6, Ans. at ¶ 7; Compl. ¶ 7.) Not only was Defendants' statement appropriate, Defendants were required to state whether they consented to the entry of a final order or judgment under the rules.

Rule 7012 of the Federal Rules of Bankruptcy Procedure requires that "A responsive pleading *shall* include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court." Fed. R. Bankr. P. 7012 (emphasis added).

Absent consent, bankruptcy courts in non-core proceedings may only "submit proposed findings of fact and conclusions of law," which the district courts review de novo. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670–71, 135 S. Ct. 1932, 1940, 191 L. Ed. 2d 911 (2015) (quoting 11 U.S.C. § 157(c)(1)).

The Bankruptcy Code provides a non-exhaustive list of sixteen different types of core proceedings. *See* 11 U.S.C. § 157(b)(2). However, "[t]o the extent that the literal wording of some of the types of proceedings might conceivably seem to apply, it should be remembered that engrafted upon all of them is an overarching requirement that property of the estate under [11 U.S.C.] § 541 be involved." *In re Harrelson*, 537 B.R. 16, 23 (Bankr. M.D. Ala. 2015) (quoting *Continental Nat'l Bank of Miami v. Sanchez* (*In re Toledo*), 170 F.3d 1340, 1348 (11th Cir. 1999)).

This adversary proceeding does not fall under any of the sixteen different types of core proceedings, and the entry of a final order or judgment by the bankruptcy court can only be done with the consent of all parties. Even if this adversary proceeding could conceivably fall under one of the sixteen different types of core proceedings, the Trustee is seeking to recover attorneys' fees on behalf of third-parties, Mr. Warner and Mr. Opheim. The underpinning of this action does not involve property of the bankruptcy estate, and therefore it is a non-core proceeding. Defendants' decision not to consent to the entry of a final order or judgment was both necessary and appropriate.

Dated: October 10, 2023

**Gordon Rees Scully Mansukhani LLP**

*By: /s/ Suzanne L. Jones*
Suzanne L. Jones, MN Bar No. 0389345
Daniel P. Brees, MN Bar No. 0395284
Gordon Rees Scully Mansukhani LLP
80 S. 8th Street
Suite 3850
Minneapolis, MN 55402
Ph: 612-364-1742
sljones@grsm.com
dbrees@grsm.com

*Attorneys for Defendants Wesley W. Scott and LifeBack Law Firm, P.A.*